UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIMBERLY J. GUEST-MARCOTTE,

     *Plaintiff*,

*v.*

LIFE INSURANCE COMPANY
OF NORTH AMERICA, METALDYNE
SALARY CONTINUATION PLAN,
and METALDYNE POWERTRAIN
COMPONENTS INC.,

     *Defendants*.
_____/

CASE NO. 15-CV-10738

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S PROCEDURAL CHALLENGE AND MOTION TO AMEND
(Docs. 27, 35)

## I.      INTRODUCTION

For the reasons stated below, it is recommended that the standard of review in this case is **ARBITRARY AND CAPRICIOUS**, Plaintiff's statement of procedural challenge (Doc. 27) be **DENIED**, and Plaintiff's motion to amend (Doc. 35) be **GRANTED IN PART AND DENIED IN PART.**

## II.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff commenced this action on February 27, 2015, based on a denial of her claim for short-term disability ("STDs") under the Employee Retirement Income Security Act ("ERISA"). (Pl's Compl. Doc. 1.) Plaintiff's alleged disability that gives rise to her

1

claim is based on her diagnosis of Ehlers-Danlos syndrome, a condition that affects the body's connective tissues. (*Id.* at ID 5.)

Plaintiff was employed at Defendant Metaldyne Powertrain Company ("Metaldyne") from July 2005 until November 22, 2013, as a Senior Risk Analysist. (*Id.* at ID 4.) Plaintiff's original complaint alleges that she was a participant in Metaldyne's Salary Continuation Plan ("Continuation Plan") governed by ERISA. (*Id.*) Plaintiff also alleges that Defendant Life Insurance Company of North America ("LICNA/CIGNA") was the plan administrator and fiduciary. (*Id.*) Plaintiff alleges that she became unable to continue her normal workload in June of 2013, due to her Ehlers-Danlos syndrome. Plaintiff applied for STDs under the Plan, relying on the testimony of Doctors Kadaj (primary) and Tinkle (expert in Ehlers-Danlos syndrome). (*Id.* at ID 5.) Plaintiff's claim was denied by Defendant LICNA/CIGNA in August of 2013, and her appeal was denied in November of 2013. (*Id.* at ID 6-7.) On November 22, 2013, Defendant Metaldyne terminated Plaintiff's employment based on documentation from Dr. Kadaj "which indicated that [she] remained unable to perform the essential functions of [her] position with or without a reasonable accommodation[,]" that she was "unlikely to recover fully/sufficiently to perform the functions of [her] position[,]" and that "the length of any leave would be indefinite in nature and a return to work was uncertain[.]" (*Id.* at ID 8.) Plaintiff notes the irony in the situation: "Metaldyne released her because she was disabled. LICNA/CIGNA denied her claim because she was not disabled, finding that she could perform the essential functions of her position." (Doc. 1 at ID 7.)

Plaintiff filed her first complaint on February 27, 2015. (Doc. 1.) Pursuant to 28 U.S.C. § 636(b)(1)(A), (B) this matter was referred to the undersigned magistrate judge on April 1, 2015. (Doc. 9.) On August 5, 2015, this Court granted Defendant's motion to dismiss Count II of Plaintiff's original complaint, which alleged a violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). (Doc. 28.) Plaintiff filed a statement of procedural challenge on August 5, 2015. (Doc. 27.) Defendants filed a response on August 7, 2015. (Doc. 29.) The undersigned magistrate judge issued an order for supplemental briefing on October 7, 2015. Each party filed a supplemental brief (Docs. 31, 32) on October 22, 2015, and a response on October 29, 2015. (Docs. 33, 34.) On November 20, 2015, Plaintiff filed a motion for leave to file a First Amended Complaint. (Doc. 35.) Defendants filed a response on December 4, 2015. (Doc. 36.) Plaintiff filed a reply on December 11, 2015, (Doc. 37) and Defendants filed a sur reply on December 29, 2015. (Doc. 39.) The statement of procedural challenge and motion to amend are ready for report and recommendation without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). I will address Plaintiff's motion to amend before her statement of procedural challenge.

### III.    **PLAINTIFF'S MOTION TO AMEND** (Doc. 35)

#### A.    **Background**

On January 22, 2015, Plaintiff requested "a copy of all plan documents related to her Short Term Disability plan and a copy of the entire claim file in this matter." (Doc. 35, at ID 768 (citing Doc 35 Exs. D, E).) Plaintiff's requests were specifically addressed

3

to the "Metaldyne Salary Continuation Plan" and "CIGNA Group Insurance" and identified Plaintiff's incident number, plan number, the claim fiduciary, and the plan holder. (*Id.*) On February 20, 2015, LICNA/CIGNA responded to Plaintiff's request by disclosing 674 pages of material described as "copies of the policy information and copy of the claim file . . . ." (*Id.* at ID 769 (citing Doc. 35 Ex. F, at 837).) The Continuation Plan, upon which Plaintiff's original complaint relies, was included in that disclosure. (Doc. 35, Ex. F, at ID 838-63; Doc. 1, Ex. 3 at ID 23-48.) The footer and cover page of the Continuation Plan record an effective date of January 1, 2012. (Doc. 35, Ex. F, at ID 838-63.)

On October 22, 2015, Defendants filed a supplemental brief (Doc. 31) on Plaintiff's Statement of Procedural Challenge. (Doc. 30.) Attached to this brief were two exhibits the "Short Term Disability Income Plan of Metaldyne, LLC" (Doc. 35, Ex. B, at ID 798-814) and the "Short Term Disability Income Plan for the Employees of Metaldyne LLC." (Collectively "STD Plans") (Doc. 35, Ex. C, at ID 815-34.) Both documents have a plan effective date of January 1, 2012. (Doc. 35, Ex. B, at ID 798; Doc. 35 Ex. C, at ID 815.) They also include the following notation in the footer of each page "Copyright © 2001-2003 . . . Revised 10/2003." (Doc. 35, Exs. B, C.) The STD Plans state, "The Employer adopted, on the effective date above, a short term disability income plan . . . ." (Doc. 35, Ex. B, at ID 798.)

As a result of this disclosure, Plaintiff seeks to file an amended complaint which adds the Short Term Disability Income Plan of Metaldyne, LLC as a new Defendant, adds five new exhibits, and cleans up the complaint by removing Count II. (Doc. 35, at

4

ID 771.) Plaintiff also seeks to add Count III, which alleges that Defendants violated ERISA Section 104(b)(4), 29 U.S.C. Section 1024(b)(4) by failing to provide the STD Plans within thirty days of her January 22 request. (Doc. 35, at ID 770.) Plaintiff asserts that Defendants "knew or should have known" that the STD Plans were requested on January 22, 2015 "as one of the documents supporting its decision to deny benefits in this case." (Doc. 35, at ID 769 (citing *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 708 (6th Cir. 2014)).) She argues that Defendants had "clear notice" that the STD Plans had been requested because she specifically requested the disability plan and its summary plan description and identified her plan number, incident number, the plan holder, and the claims fiduciary. (Doc. 35, at ID 769-70.) Plaintiff seeks penalties pursuant to ERISA Section 502(c)(1)(B), 29 U.S.C. Section 1132(c)(1)(B) and 29 C.F.R. Section 2575.502c-1. (Doc. 35, Ex. A, at ID 791, 794.)

### B.    Standards

When a party wishes to amend a pleading after the opposing party's responsive pleading has been served, it may only do so by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). When a motion for leave to amend is before the court, Rule 15(a) provides that "leave shall be freely given when justice so requires." *Id.* "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality," *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995), because, despite the Rule's liberality, leave to amend "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision to grant or deny a motion

to amend is left to the sound discretion of the district court. *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir. 1990).

When determining whether to grant leave to amend, the court is to consider several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). Courts may also consider whether the matters contained in the proposed amended complaint are unrelated to claims in the original complaint. *Hestep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001). A proposed amendment is futile if the amendment could not withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382-83 (6th Cir. 1993).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise

the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action." *Id.*

### C.    Parties Arguments

Defendants do not specifically object to Plaintiff's proposed addition of the Short Term Disability Income Plan of Metaldyne, LLC as a new Defendant, or the removal of Count II from the complaint. (*See* Doc. 36.) However, they do object to Plaintiff's proposed Count III claim, on the grounds of futility. (*Id.* at ID 881-84.)

Defendants assert that the STD Plans "have no application to Plaintiff's claim" for a number of reasons. (Doc. 36, at ID 880.) First, the STD Plans do not correctly describe the Plan as the "Metaldyne Salary Continuation Plan." (*Id.*) Second, the STD plans were created by CIGNA/LICNA and not Metaldyne; thus it does not constitute a summary plan description. (*Id.*) Third, the STD Plans pre-date the Continuation Plan because the STD Plans include a 2001-2003 copyright date and a revision date of October 2003. (*Id.* at ID 879-80.) Moreover, the Continuation Plan contains an integration clause, which states, "This [Continuation Plan] along with any supplements represents the plan as a whole and the current version supersedes any previous version of the document." (Doc. 35, Ex. F, at ID 863.)

Defendants argue that Plaintiff does not have a claim under ERISA Section 104(b)(4), 29 U.S.C. Section 1024(b)(4) because defendants were only required to produce a copy of the *latest* summary plan description. (Doc. 36, at ID 882.) Defendants cite *Cornelius v. Dykema Gosset PLLC Retirement Plan*, which held that, "[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4)." No. 11-13186, 2012 U.S. Dist. LEXIS 176247, 2012 WL 6193861, at *3 (E.D. Mich. Dec. 12, 2012) (citation omitted). Since the Continuation Plan supersedes the STD Plans, and complies with the requirements of a summary plan under 29 U.S.C. § 1022(b), Defendants argue that they complied with Section 1024(b)(4). (Doc. 36, at ID 883-84.)

Alternatively, Defendants argue that Plaintiff's proposed Count III is futile with regard to any entity except the plan administrator because "an insurance company, which is not a plan administrator, cannot be liable for statutory damages for failure to comply with an information request." (Doc. 36, at ID 884 (citing *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002).) Defendants assert that under 29 U.S.C. § 1002(16) Metaldyne L.L.C. is the plan administrator. (Doc. 36, at ID 883.)

Defendants also argue that Plaintiff's proposed Count III is moot because Plaintiff has received the STD Plan and STD Summary Plan through the course of her lawsuit. (Doc. 36, at ID 884.) Defendants point out that an award of fees is at the discretion of the court. (*Id.* at 882 (citing ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B))), and rely on *Staib v. Vaughn Industries*, 171 F. Supp. 2d 714, 715 (N.D. Ohio 2001) stating that it

held a similar request moot because production had been accomplished as a result of the litigation. (Doc. 36, at ID 884.)

In her reply brief, Plaintiff argues that Defendants corrected the record by attaching the STD Plans to their supplemental brief and asserted that "Plaintiff has been seeking her short term disability benefits under the wrong ERISA plan." (Doc. 37, at ID 902.) She points out that the STD Plans are not generic because they clearly apply to STDs and identify Metaldyne as the provider. (*Id.*) She also notes that the Continuation Plan and the STD Plans share an effective date of January 1, 2012, and each plan covers the same disability benefit topics and welfare benefit plan issues. (*Id.* at ID 902-03.) Finally, she notes that the STD Plans identify the same plan administrator as the latest U.S. Department of Labor, ERISA Form 5500, the "Annual Return/Report of Employee benefit Plan." (*Id.* at 903 (citing Doc. 37 Ex. A).)

Plaintiff then contends that Defendants' argument that the citation to the STD Plans was an inadvertent error is nonsensical. (Doc. 37, at ID 904.) Plaintiff states

> we are at a loss to understand how a plan whose name covers the very issue in this case; whose plan terms and conditions cover the same short term disability claims in this case; and whose plan covers the same time period, could possibly be the wrong plan. Defendants have brought up this new plan to the court as the relevant, correct plan, and are now changing their mind back to the original plan that Plaintiff sued them for.

(*Id.*) Plaintiff than asks for a "full accounting" of the STD Plans including the corporate history and any distinctions between the STD Plans and the Continuation Plan. (*Id.*) She also seeks attorney fees and a more candid discussion of why the Continuation Plan is the "correct" plan. (*Id.* at ID 905.)

In response, Defendants allege that Plaintiff has created unnecessary confusion and that they did not assert that Plaintiff has been seeking her STDs under the wrong ERISA plan. (Doc. 39, at ID 942.) They list a number of facts to "dispel any confusion and reaffirm that the only relevant plan document in this case is the [Continuation Plan]." (*Id.* at ID 941.) First, they state that Plaintiff's STD claim was filed under the Continuation Plan and "her internal appeal refers solely" to her Continuation Plan claim. (*Id.*) Second, they state that the January request referred only to Continuation Plan documents. (*Id.*) Third, Plaintiff's complaint sought benefits under the Continuation Plan and attached a copy of the plan. (*Id.*) Fourth, Defendants inadvertently attached the STD Plan to their supplemental brief. (*Id.*) Fifth, the only document that applies to Plaintiff's claim is the Continuation Plan which supersedes the STD Plan. (*Id.* at ID 942.) Defendants also argue that Plaintiff's reply seeks improper relief because it seeks discovery before Plaintiff has even filed her amended complaint. (*Id.* at 940.)

### D.    Analysis

Defendants do not object to Plaintiff's proposed removal of Count II or the proposed additional Defendant to Count I. (*See* Doc. 36.) There has been no bad faith, no undue delay since this case is in its early stages, there have been no failures to cure deficiencies, and Defendants have not alleged any undue prejudice. Thus, I find that Plaintiff should be granted leave to add the additional Defendant to Count I and remove Count II from the complaint. *See* Fed. R. Civ. P. 15(a).

With regard to the proposed Count III, Plaintiff's proposed amended complaint adds a Count III but does not add any additional Defendant under this proposed Count. Section 104(b)(4) of ERISA, 29 U.S.C. 1024(b)(4), provides:

> The Administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description and the latest annual report, and a terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated.

If a plan administrator fails or refuses to provide a copy of the above documents within thirty days of a request the court has discretion to hold the administrator personally liable "in the amount of up to $ 100[1] a day from the date of such failure or refusal." 29 U.S.C. § 1132(c). The court may also impose "such other relief as it deems proper." *Id.* Thus Defendants are correct that the plan administrator was responsible for turning over only the latest copy of the summary plan description in response to Plaintiff's request. However, I am not persuaded by Defendant's argument that the Continuation Plan supersedes the STD Plans. The integration clause identified by Defendants states that the Continuation Plan "supersedes any previous version of the document." (Doc. 35, Ex. F, at ID 863.) However, taking the facts in the light most favorable to Plaintiff, a copyright date and revision date on a document that identifies the same effective date as the Continuation Plan, does not sufficiently demonstrate that Plaintiff has failed to allege a claim upon which relief can be granted. Moreover, Defendants fail to provide any support for their allegations that the STD Plans are not applicable to Plaintiff's claims. (Doc 36, at ID 880.) They do not provide any authority for their claim that a summary plan must

---

[1] This amount has been increased to $110 per day. 29 C.F.R. 2575.502c-1.

be drafted by the employer; nor do they explain why it is relevant that the STD Plans do not describe the Plan as the Metaldyne Salary Continuation Plan. (*Id.*) Notably, Defendants do not allege that the STD Plans fail to meet the requirements of a summary plan under 29 U.S.C. § 1022(b). Although, I question the fact that the STD Plans refer to Metaldyne L.L.C. as the employer and not Metaldyne Powertrain Company, I cannot find that this alone demonstrates that Plaintiff's Count III allegations are futile. (Doc. 35, Exs. B, C.)

Similarly, I am unpersuaded by Defendants' argument that Plaintiff's proposed Count III is moot because Defendants have already produced the documents. Defendants' citation to *Staib v. Baughn Industries*, is inapposite. 171 F. Supp.2d 714 (N.D. Ohio 2001). In *Staib*, the court held that Plaintiff's request for production of documents was moot because she had already received them. *Id.* at 715. Here, Plaintiff is seeking a penalty due to Defendants' failure to produce the documents within the appropriate time period. She is not seeking production of the documents. (Doc. 35 Ex. A, at ID 790-92.) Moreover, the *Staib* court found that Defendants' failure to produce the documents was inadvertent. 171 F. Supp.2d at 715. Here, Defendants argue that they were not required to produce the documents. (Doc. 36, at ID 880.)

On the other hand, Defendants are correct in arguing that Count III is futile with regard to any entity except the plan administrator. (Doc. 36, at ID 884). The Plan Administrator is the "person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(i). Both the STD Plans and the Continuation Plan, identify Metaldyne L.L.C. as the plan administrator. (Doc. 35, Ex. C,

at ID 834; Doc. 35 Ex. F, at ID 857-58.) CIGNA/LIGNA appears to be the claim administrator. (Doc. 35, Ex. C, at ID 827, 831; Doc. 35 Ex. F. at ID 840, 851-52.) The Sixth Circuit has held that "only plan administrators are liable for statutory penalties under section 1132(c)." *Caffey*, 302 F.3d at 584. "Specifically, the court has held that an insurance company acting as claims administrator is not a plan administrator and cannot be held liable for statutory penalties for failure to comply with an information request." *Gillespie v. Liberty Life Assur. Co.*, No. 1:10-cv-388, 2011 WL 590369, 2011 U.S. Dist. LEXIS 13295, at *6 (W.D. Mich. Feb. 10, 2011) (citing *Caffey*, 302 F.3d at 584-85; *VankerKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992)). Thus, the only entity liable under Plaintiff's proposed Count III would be the plan administrator, Metaldyne L.L.C., which has not been named as a Defendant. Thus, I agree with Defendants that the proposed amendment would be futile.

Therefore, I find that Plaintiff's motion to amend should be granted in part and denied in part.

## IV.   <u>PLAINTIFF'S STATEMENT OF PROCEDURAL CHALLENGE</u> (Doc. 27.)

### A.   Background

Plaintiff seeks discovery in this matter to determine whether the decision "was influenced/occurred due to bias or conflict of interest by the LICNA/CIGNA individual decision makers, by LICNA/CIGNA itself, or by the [Continuation Plan]." (Doc. 27, at ID 337.) She alleges that discovery is justified because the following indicates a "potential for bias or a conflict of interest:" (1) substantial medical evidence supporting

Plaintiff's claim was ignored by Defendants; (2) Defendants "cherry picked" medical evidence to support a finding of not disabled and ignored substantive contrary evidence; (3) the definition of "disability" found in the Continuation Plan was not used by LICNA/CIGNA in reviewing Plaintiff's claim, even after Plaintiff informed it of the inconsistency; (4) the administrative record will demonstrate that LICNA/CIGNA never reviewed specific medical evidence provided by Plaintiff in her final internal appeal. (*Id.* at ID 337-38).

Defendants assert, that the "inadvertent" citation to the STD Plans in their supplemental brief and response to the supplemental brief does not affect the merits of the argument set forth there. "This is because discretionary language in the [Continuation Plan] mandates the application of the arbitrary and capricious standard of review and the OFIS administrative rule applies only to insured plans and not to self-funded plans such as the plan at issue here. (Doc. 36, at ID 880.) Thus in considering Plaintiff's Statement of Procedural Challenge I will consider application of both parties' arguments to both the STD Plans and the Continuation Plan.

## B.    Governing Law

Discovery in actions for benefits under ERISA is unavailable unless the plaintiff claims that the decision to deny benefits was marred by conflicts of interest or lack of due process. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998). Absent a "colorable procedural challenge" alleging conflict of interest or improper process, *Johnson v. Connecticut General Life Insurance Co.*, 324 F. App'x 459, 467 (6th Cir. 2009), the district court's review is "based solely upon the administrative record." *Wilkins*, 150 F.3d at 619. However, the relevancy of conflicts of interest, as argued here,

14

turns upon the applicable standard of review. *See McKenna v. Aetna Life Ins. Co.*, No. 13-12687, 2014 U.S. Dist. LEXIS 48880, 2014 WL 1389050, at *2 (E.D. Mich. Apr. 9, 2014) (Ludington, J.).

Generally, where the plan gives the fiduciary or administrator discretion to determine eligibility, the arbitrary and capricious standard applies. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). In Michigan, however, the regulatory body overseeing insurance policies, the Michigan Office of Financial and Insurance Services, has prohibited policies enacted or revised after July 1, 2007 that grant discretionary authority which would trigger the arbitrary and capricious review standard. Mich. Admin. Code R. 500.2201-02 (2015). *See also Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 602-03 (6th Cir. 2009); *Rice-Peterson v. UNUM Life Ins. Co. of America*, No. 11-14565, 2013 U.S. Dist. LEXIS 42561, 2013 WL 1250457, at *7-8 (E.D. Mich. Mar. 26, 2013).

According to the regulations

> (b) On and after [July 1, 2007] . . . an insurer shall not issue, advertise, or deliver to any person in this state a policy, contract, rider, indorsement, certificate, or similar contract document that contains a discretionary clause. This does not apply to a contract document in use before that date, but does apply to any such document revised in any respect on or after that date.

> (c) On and after [July 1, 2007] . . . a discretionary clause issued or delivered to any person in this state in a policy, contract, rider, indorsement, certificate, or similar contract document is void and of no effect. This does not apply to contract documents in use before that date, but does apply to any such document revised in any respect on or after that date.

Mich. Admin. Code R. 500.2202(b)-(c). A discretionary clause "purports to bind the claimant to or grant deference in subsequent proceedings to the insurer's decision, denial, or interpretation" of the policy. *Id.* R. 500.2201(c). A clause meets this definition by, among other things, giving rise to a standard of review on appeal other than *de novo* review. *Id.* R. 500.2201(c)(vii). The Sixth Circuit has found that ERISA, which explicitly supersedes state laws on employee benefit plans, 29 U.S.C. § 1144(a), does not preempt these regulations because the rules are directed toward insurance entities. *Ross*, 558 F.3d at 605-06, 609. As a result of these regulations, "any ERISA plans issued or amended after July 1, 2007 requires '*de novo* review of denials of ERISA benefits within Michigan.'" *Rice-Peterson*, 2013 WL 1250457, at *8 (quoting *Gray v. Mut. Of Omaha Life Ins. Co.*, No. 11-15016, 2012 WL 2995469, at *3 (E.D. Mich. July 23, 2012)). This is true even if the plan contains discretionary language, since such provisions are void. *Id.*; *see also Keane v. Lincoln Nat'l Life Ins. Co.*, No. 1:11-CV-656, 2012 U.S. Dist. LEXIS 133188, 2012 WL 4127827, at *5 (W.D. Mich. Sept. 18, 2012).

### 1.      Administrative Code Rule 500.2201.-02 Does Not Apply

The Continuation Plan has the necessary discretionary language to trigger Michigan Administrative Code Rule 500.2201.-02 ("Rule 500.2201.-02.") (Doc. 32, at ID 533, 535-37.) The STD Plans do as well. (Doc. 31, at ID 445-47.) However, Defendants argue that Rule 500.2201.-02 does not apply because the Continuation Plan and STD Plans are self-funded, and Rule 500.2201-02, as it applies to self-funded plans, is preempted by ERISA. (Doc. 31, at ID 448, 450; Doc. 36, at ID 880.)

16

A self-funded plan is one where the employer "does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants." *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990). In *FMC Corporation v. Holliday*, the Supreme Court identified three clauses in ERISA that deal with preemption. First, the preemption clause "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *Id.* at 58. Second, "[t]he saving clause returns to the States the power to enforce those state laws that 'regulate insurance,' except as provided in the deemer clause." *Id.* Third, "[u]nder the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts.'" *Id.* The court then concluded:

> we read the deemer clause to exempt self-funded ERISA plans from state laws that "regulate insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer . . . or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation.

*Id.* at 62 (1990).

17

Both plans at issue in this case are self-funded. The Continuation Plan is funded through the general assets of Metaldyne and identifies itself as self-funded. (Doc. 35, Ex. F, at ID 861-62.) The STD Plans also state that its costs are financed by the employer. (Doc. 35, Ex. B, at ID 812.) Metaldyne L.L.C. is the plan administrator for both plans. (Doc. 35, Ex. C, at ID 834; Doc. 35, Ex. F, at ID 861-62.) Thus Rule 500.2201-02 does not apply here. *See Shumpert v. Disability Benefits Program for Hourly Employees*, No. 2:12-cv-14786, 2014 U.S. Dist. LEXIS 54850, 2014 WL 1600336, at *5 (E.D. Mich. Ar. 21, 2014) ("Although prohibitive of discretionary clauses in insurance policies issued after July 1, 2007, the Plan at issue in this case is self-funded by GM, . . . and therefore outside the scope of the regulation."); *Moskal v. Aetna Life Ins. Co.*, No. 10-14890, 2012 Dist. LEXIS 2599, 2012 WL 71845, at *3 (E.D. Mich. Jan. 10, 2012).

### 2.    The Applicable Standard of Review is Arbitrary and Capricious

The STD Plans and the Continuation Plan both give the administrator the discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the plan, triggering arbitrary and capricious review. (Doc. 31, at ID 445-47; Doc. 32, at ID 533, 535-37.) *See Firestone Tire & Rubber Co.*, 489 U.S. 101, 103 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.") However, Plaintiff argues that the plan itself acted arbitrarily and capriciously by repeatedly applying a definition of disability that differed from the definition found in the plan. (Doc. 32, at ID 533-34 (citing *O'Shea v. First Manhattan Co. Thrift Plan & Trust*,

18

55 F.3d 109, 112 (2d Cir. 1995); *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004) ("In this case, MetLife added an eligibility requirement under the guise of interpreting the term 'accident' that does not exist in either the Plan documents or federal common law; therefore, MetLife's interpretation of the Plan is arbitrary and capricious.").) Plaintiff asserts that *de novo* review is required because Defendants did not make an honest mistake, but acted in bad faith or failed to exercise discretion fairly. (Doc. 32, at ID 533 (citing *Conkright v. Frommert*, 559 U.S. 506 (2010).) Plaintiff states, "The ineluctable logic behind the courts not using the arbitrary and capricious standard when a plan relies on language not found in the plan to deny benefits is explained as a 'fairness' issue in the context of the difference in language between the plan itself and its summary plan description." (Doc. 32, at ID 534 (citing Doc. 32, Ex. 2 *Serrato v. Short Term Disability Income Plan*, Case No. 1:08-cv-0780 (W.D. Mich. March 12, 2009).) Plaintiff alleges that "[t]he integrity of the Plan's decisions has been compromised by its failure to use the correct eligibility language, even after being so advised by Claimant. Its decisions are 'fatally flawed' to the extent that the Plan's decisions were arbitrary and capricious, entitling Plaintiff to a '*de novo*' review of her disability claim." (Doc. 32 at ID 535.)

Plaintiff's argument is based on a fundamental misunderstanding of the analysis under an arbitrary and capricious standard of review. Upon reviewing the case law cited by Plaintiff it is clear that a finding that the plan itself acted arbitrarily and capriciously is a determination on the merits, and does not mandate a *de novo* review of the Plaintiff's claim. In *O'Shea v. First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir.

1995), after determining that the standard of review was arbitrary and capricious the court set forth the following description of the standard:

> Under the arbitrary and capricious standard, the scope of review is narrow. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285, 42 L. Ed. 2d 447, 95 S. Ct. 438 (1974). Thus, "we may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan* [*v. Nynex Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)] (quoting *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles* [*v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*,] 698 F.2d [593,] 601 [(2d Cir. 1995)]. However, "where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *Id.* at 599.

Most of the cases cited by Plaintiff use the arbitrary and capricious standard. *Lanier v. Met. Life. Ins. Co.*, 692 F. Supp. 2d 775, 785 (E.D. Mich. 2010) ("Where, as here, 'the benefit plan does grant such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the 'arbitrary and capricious' standard of review.'"); *Jones v. Met Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004) ("[W]e will evaluate under the deferential arbitrary-and-capricious standard of review MetLife's denial of Jones's claim for PAI benefits.") *Haynor v. General Motors Corp.*, 606 F. Supp. 2d 675, 686 (E.D. Mich. 2009) (applying the arbitrary and capricious standard). Thus, for instance, in *Jones v. Metropolitan Life Ins. Co.*, the Court's finding that the Plan acted arbitrarily and capriciously by adding terms to the plan's language and excluding

coverage  was a holding on the merits of the substantive claims. 385 F.3d at 665. It was not a finding that the court should review the case under the *de novo* standard. *Id.*

Moreover, Plaintiff's citation to *Serrato*, is inapposite. (Doc. 32, Ex. 3.) First, the argument in that case was that there was a conflict between the plan and the summary plan description. (*Id.* at ID 560.) Here, Plaintiff's argument is that the plain language of the plan was misinterpreted by the use of an incorrect definition of disability.[2] (Doc. 1, at ID 6.) Second, Plaintiff conveniently leaves out of her citation the fact that the court was not persuaded by the argument that the *de novo* standard applied because of the alleged conflict between the summary description and plan documents. (Doc. 32, Ex. 2, at ID 560.) The court found that the proper standard of review was *de novo* because Defendants failed to show proper delegation of fiduciary responsibilities, an issue that has not been raised here. (Doc. 32, Ex. 2, at ID 561.)

The only argument by Plaintiff which finds some support is that *de novo* review should be applied where the plan administrator acted in bad faith. (Doc. 32, at ID 533.) In *Conkright v. Frommert*, 559 U.S. 506, 513-14 (2010) the Supreme Court held that courts must afford deference to the discretionary acts of plan administrators not only in their "first efforts to construe the plan," but also in their second efforts so long as those efforts are not taken in bad faith. The court rejected the "one-strike-and-you're-out" approach to ERISA plan administrator deference, stating that "*Firestone*, . . . set out a broad standard of deference without any suggestion that the standard was susceptible to ad hoc

---

[2] Plaintiff notably does not allege that the Continuation Plan and the STD Plans had different standards of disability in her motion to amend. (Doc. 35.)

exceptions. . . ." *Conkright*, 599 U.S. at 512. However, the only allegation of bad faith alleged by Plaintiff is that Defendants had written notice that they had interpreted the plain language of the plan inaccurately prior to the final administrative decision. (Doc. 32, at ID 535.) Plaintiff does not cite to any case law which would suggest that this act alone supports a finding of bad faith. Moreover, Plaintiff's argument presumes that the definition of disability applied by Defendants was in fact erroneous, a substantive finding on the merits which is premature at this stage of the litigation. Thus I find that the appropriate standard of review is arbitrary and capricious.

### C.    Plaintiff has Failed to Allege a Colorable Procedural Challenge

As previously noted, discovery is generally not available in actions for benefits under ERISA. *Wilkins*, 150 F.3d at 618. Absent a "colorable procedural challenge" alleging conflict of interest or improper process, *Johnson*, 324 F. App'x at 467, the district court's review is "based solely upon the administrative record." *Wilkins*, 150 F.3d at 619.

Plaintiff argues that she is entitled to discovery because "she seeks to determine whether [the] decision [to deny benefits] was influenced/occurred due to bias or conflict of interest by the LICNA/CIGNA individual decision makers, by LICNA/CIGNA itself, or by the Metaldyne Salary Continuation Plan." (Doc. 27, at ID 337.) In order to understand Plaintiff's procedural challenge it is first necessary to review the case law cited by Plaintiff.

Plaintiff cites to *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008) as the standard for discovery in ERISA cases. However, her citations from the case are

vague and misleading. In *Glenn*, the Supreme Court decided that a *per se* conflict of interest exists when an entity that administers an ERISA plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Id.* at 108. The Court noted that it does not "believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict," as such "special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." *Id.* at 116-17. In this case, there is no *per se* conflict of interest. Metaldyne L.L.C. is the plan administrator. (Doc. 35, Ex. F, at ID 859; Doc. 35, Ex. C, at ID 834.) The employer is responsible for paying benefits under the plans. (Doc. 35, Ex. C, at ID 812; Doc. 35, Ex. F, at ID 862.) The claims administrator is responsible for reviewing claims for benefits under the plans. (Doc. 35, Ex. C, at ID 827, 831; Doc. 35 Ex. F, at ID 840, 851-52.) CIGNA/LIGNA is the claims administrator. (*Id.*) Thus, the holding in *Glenn* is not particularly relevant to Plaintiff's procedural challenge.

Plaintiff's reliance on *Mulligan v. Provident Life & Accident Insurance Co.*, 271 F.R.D. 584 (E.D. Tenn. 2011) is also misplaced. Plaintiff alleges that the *Mulligan* court noted that a showing of conflict of interest is not possible without some discovery. (Doc. 27, at ID 338) "Thus a court cannot fairly fault the plaintiff for failing to show the contours of an administrator's conflict without first allowing some discovery." (*Id.* (citing *Mulligan*, 271 F.R.D at 588 n.3).) However, in *Mulligan* the Defendant conceded that discovery was appropriate because there was a *per se* conflict of interest and the court

was tasked with setting the scope of discovery. 271 F.R.D. at 587. Thus, the court did not hold that a conflict of interest could not be shown without discovery, but rather that the importance of that conflict and the weight that the court should accord that conflict may not be evident without some discovery. *Id.* at 588 n.3. Notably, the court explained, "A plaintiff may not allege that a plan administrator was biased with only an uninformed hope that discovery will turn up some evidence." *Id.* at 588 n.4.

Defendants assert that while there is a very narrow exception permitting discovery outside the administrative record in ERISA cases, mere conclusory allegations of bias, like those presented by Plaintiff, are insufficient to warrant discovery. (Doc. 29, at ID 355 (citing *Bennetts v. At&T Umbrella Plan No. 1*, No. 12-14640, 2013 U.S. Dist. LEXIS 112234, 2013 WL 4042661, at \*2 (E.D. Mich. Aug. 9, 2013).) Defendants argue that Plaintiff's procedural challenges are "either substantive challenges to the benefit denial or mere conclusory allegations of bias." (Doc. 29, at ID 356.) I am inclined to agree with Defendants.

Plaintiff asserts that Defendants ignored substantive medical evidence, cherry picked medical evidence to support their finding, applied an erroneous definition of disability, and failed to review medical evidence. (Doc. 27, at ID 338.) These challenges are clearly substantive challenges which do not entitle Plaintiff to discovery beyond the administrative record. *Moss v. Unum Life Ins. Co.*, 495 Fed. Appx. 583, 597 (6th Cir. 2012) (affirming the grant of a protective order because discovery requests seeking information related to the leave policy and payments for supplemental life insurance were substantive challenges).

24

A similar argument that claim administrators failed to review medical evidence was rejected in *Greer v. Hartford Life & Accident Insurance Co.*, No. 08-12837, 2009 WL 1620402, 2009 U.S. Dist. LEXIS 48332 (E.D. Mich. June 9, 2009). The court stated:

> The administrative record upon which the Defendant's decision was made, however, is available for review. To the extent that insufficient regard was paid to material in the record, there is no need for discovery to demonstrate that lack of respect. Plaintiff offers no evidence that Defendant relied on documents which do not appear in the record. Nor does she establish that she was denied an opportunity to submit relevant medical evidence for Defendant's review.

*Id.* at *13. Thus, Discovery outside of the administrative record is not necessary to determine Plaintiff's claims that Defendants cherry picked evidence, applied an erroneous definition of disability, and ignored medical evidence.

In response to Defendant's supplemental brief Plaintiff raises a new argument that a *per se* conflict of interest exists because "an insurance company that is retained to review disability claims has an incentive to find no disability in order to save money for the employer and to preserve their own contractual arrangement with the employer." (Doc. 34, at ID 754 (citing *Kalish v. Liberty Mutual*, 419 F.3d 501, 507-508 (6th Cir. 2005).) Plaintiff cites to *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (9th Cir. 2005) "noting that the 'possible conflict of interest inherent in this situation should be taken into account as a factor in determining whether [a plan administrator's] decision was arbitrary and capricious.'" (Doc. 34, at ID 754.) However, Plaintiff's citation is once again misleading. The *Calvert* court was referring to a situation where a *per se* conflict of interest existed because the same party determined whether to pay the claimant and was responsible for making those payments. 409 F.3d at 292 ("Liberty is acting under a

potential conflict of interest because it is both the decision-maker, determining which claims are covered, and also the payor of those claims."). *See also Kalish*, 419 F.3d at 506 ("Liberty's operation of the Plan as both the insurer and the administrator creates a conflict of interest.") As previously discussed there is no similar conflict of interest here.

The only case cited by Plaintiff that dealt with a similar allegation of bias is *Greer*, which permitted discovery where the Plaintiff challenged the independence of a file reviewer. However, this allegation alone did not warrant discovery. The Plaintiff also attached a market study of the administrator's practices, which the court found warranted limited discovery of the business relationship between the administrator and the file reviewer. *Id.* at *15-16. Plaintiff has not attached any similar evidence regarding the relationship between CIGNA/LIGNA and Metaldyne. Thus as defendants point out Plaintiff's allegations are merely conclusory and do not warrant discovery. *Mellian v. Harford Life & Acc. Ins. Co.*, No. 14-10867, 2014 WL 7366104, at *5 (Dec. 24, 2014) ("The absence of evidentiary support for Plaintiff's allegations of bias and conflict of interest serves to distinguish this case from other ERISA actions for benefits in which discovery was permitted."). Thus Plaintiff has not demonstrated that discovery is warranted in this case.

## V.   <u>CONCLUSION</u>

For the reasons stated above, I recommend that Plaintiff's procedural challenge should be **DENIED.** Plaintiff's motion to amend should be **GRANTED IN PART AND DENIED IN PART.** Plaintiff should be granted leave to amend her complaint to add

26

Defendant Short Term Disability Income Plan of Metaldyne, L.L.C. as a Defendant and to remove Count II but Plaintiff should not be granted leave to add Count III to her complaint. I also recommend that the appropriate standard of review in this case is **ARBITRARY AND CAPRICIOUS**.

## VI.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labelled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 17, 2016               S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge


## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 17, 2016               By s/Kristen Krawczyk
                                       Case Manager