UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIMBERLY J. GUEST-MARCOTTE,

                Plaintiff,                        Case No. 15-cv-10738

v                                                  Honorable Thomas L. Ludington
                                                  Magistrate Judge Patricia T. Morris
LIFE INSURANCE COMPANY OF
NORTH AMERICA, et al.,

                Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

      Plaintiff Kimberly J. Guest-Marcotte filed her complaint on February 27, 2015 asserting a claim for short term disability ("STD") benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as a claim for disability discrimination under the Michigan Persons with Disability Civil Rights Act (PWDCRA), MCL 37.1101, et seq., against her former employer, Metaldyne Powertrain Co., and her former employer's ERISA Plan administrator, Life Insurance Co. of North America ("LINA"). ECF No. 1. On April 1, 2015, all pretrial matters were referred to Magistrate Judge Morris. ECF No. 9. Defendants filed a motion to dismiss, an answer, and a counterclaim on April 24, 2015. ECF Nos. 11, 12. Plaintiff then filed an answer to Defendants' counterclaim on May 13, 2015. ECF No. 17. On June 22, 2015, Magistrate Judge Morris issued a report recommending that the Court grant Defendants' motion to dismiss, to which Plaintiff filed objections on July 2, 2015. ECF No. 20, 21. The court ultimately issued an order overruling Plaintiff's objections, adopting the Magistrate Judge's report, and dismissing Plaintiff's PWDCRA claim. ECF No. 28.

Following supplemental briefing, Plaintiff filed a motion for leave to file a first amended complaint on November 20, 2015. ECF No. 35. The Magistrate Judge issued a report, ECF No. 40, which the Court adopted, granting Plaintiff's motion to amend in part and confirming the standard of review as arbitrary and capricious. ECF No. 42. Plaintiff then filed an amended complaint on April 19, 2016. ECF No. 44. After filing of the administrative record and pertinent plan documents (ECF Nos. 49, 50), Plaintiff moved for judgment on August 5, 2016. ECF No. 54. Defendants moved for dismissal of Plaintiff's case and judgment on the counterclaim. ECF No. 55. On December 1, 2016, Magistrate Judge Morris issued a report recommending that the court deny Plaintiff's motion and grant Defendants' motion, noting that "[t]ime and again, this Circuit has held that "it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity.'" Rep. & Rec. at 25, ECF No. 63 (quoting *Rose v. Hartford Financial Services Group, Inc.*, 268 F. App'x 444, 453 (6th Cir. 2008)). On January 6, 2017, the Magistrate Judge's report was adopted, and Plaintiff's claims were dismissed with prejudice. ECF No. 67. Plaintiff timely appealed the decision. ECF No. 75. The Court of Appeals for the Sixth Circuit issued its opinion on March 30, 2018, reversing the dismissal of Plaintiff's claims and remanding the matter for a full and fair review of Plaintiff's condition and her application for STD benefits. ECF No. 81. Judgment was entered in favor of Plaintiff on April 27, 2018. ECF No. 84. On May 21, 2018, Plaintiff filed a motion for attorney fees and costs. ECF No. 85. For the following reasons, that motion will be denied.

**I.**

It is undisputed that Plaintiff has been diagnosed with and suffers from Ehlers-Danlos Syndrome Type III ("EDS"), a hereditary disease characterized by loose connective tissue and frequent joint dislocations. It is medically known that EDS can cause chronic pain. On the

recommendation of her primary care physician, Dr. Kadaj, and an expert in EDS, Dr. Tinkle, Plaintiff sought a disability leave of absence in June 2013. Adm. Record at 102–03, ECF No. 49-1. Soon thereafter, Plaintiff applied for short-term disability benefits through Defendant Life Insurance Company of North America ("LINA"). In support of her application, Dr. Kadaj submitted a medical request form, in which he concluded that Plaintiff should not return to work, even if significant accommodations were made. Dr. Tinkle also submitted a medical request form. Dr. Tinkle concluded that Plaintiff could return to work if she did not lift objects heavier than five pounds, did not engage in any repetitive motions, and took frequent breaks. *Id.* at 59. Plaintiff was initially denied benefits in August 2013. *Id*. The denial was based on a review of the notes from Plaintiff's office visits, medical request forms from both Dr. Kadaj and Dr. Tinkle, and a clarification request from Dr. Tinkle. *Id*. Before making its determination, LINA followed up with both treating doctors and Plaintiff on several occasions. Adm. Record at 154, 162, ECF No. 49-2; Adm. Record at 49, ECF No. 49-5. The medical evidence was reviewed by Nurse Case Manager Sarah Drudy and Dr. Paul Seiferth. Adm. Record at 74, ECF No. 49-6. LINA denied the claim for the reasons explained in Judge Morris's report:

> Ultimately, July 3, 2013 commentary from a physician reviewer, Paul D. Seiferth, M.D., notes that Dr. Tinkle's findings, which explicitly indicate Ehlers-Danlos Syndrome with joint pain and laxity, "are remarkable for TMJ [temporomandibular joint] crepitation, normal extremity range of motion, and strength, hyper-mobility of joints on the Beighton scale 5/9." (Doc. 49-6 at 74). He continued to note that imaging showed "central cervical spine stenosis at C4-5 with no clinically correlated signs," and no signs that Plaintiff's condition "worsened at incur" as she was "functional at a sedentary demand level" since her original diagnosis in 2005. (Id.). Later, on July 22, 2013, an updated review of medical evidence submitted by Dr. Kadaj failed to support Plaintiff's inability "to perform prolonged sitting, standing, [or] lifting greater than 10 pounds or pushing/pulling activities" with "diagnostic testing results indicating [the] nature and presence of functional loss." (Doc. 49-6 at 67). Her initial claim was denied on these grounds, and indicated that while LICNA/CIGNA was "in no way stating [that Plaintiff's] symptoms do not exist, . . . there [was] no documentation or a functional deficit" and "no diagnostic testing on file to support [Plaintiff's] diagnosis." (Doc. 49-1 at 60).

Rep. & Rec. at 13.

Plaintiff appealed the denial of benefits in September 2013. *Id.* at 95–96. Her appeal contained supplemental medical information, including notes from additional office visits; letters from Dr. Kadaj, Dr. Tinkle, Sheila Isles-Truax (Plaintiff's physical therapist), Dr. Wilkinson (Plaintiff's acupuncturist), and Dr. Deitrick (Plaintiff's therapist); x-ray results; lab work results; and notes from physical therapy sessions. *Id.* Before making a determination on Plaintiff's appeal, LINA requested follow-up information several times. Adm. Record at 14, ECF No. 49-3. Plaintiff's appeal, and all included medical information, was reviewed this time by an additional physician, Dr. Nick Ghaphery. Adm. Record at 34, ECF No. 49-6. In November 2013, LINA rejected Plaintiff's appeal and affirmed the denial of benefits on the same grounds. Adm. Record at 96, ECF No. 49-1. Gena Morton, writing for LINA, provided an explanation which was summarized in Judge Morris's report:

> She observed that "the medical information on file did not identify any significant clinical findings to demonstrate a functional impairment." (Doc. 49-6 at 34). She noted that lab results revealed no "significant abnormalities that would preclude functional demands," and that despite office notes from Dr. Kadaj indicating "limited right shoulder motion in abduction, and abnormal joint palpitation, there are no quantified measurable strength or functional deficits documented" to support these alleged limitations. (Id.). Plaintiff's EMG, for instance, did not "demonstrate evidence of radiculopathym myopathy, or peripheral neuropathy," and her MRI—which did reveal "moderate central canal stenosis at C4- C5"—nevertheless "would not preclude functional demands." (Id.)

Plaintiff filed her final internal appeal in July 2014, which included the following additional medical information: statements from Dr. Kadaj and Dr. Tinkle; Dr. Tinkle's curriculum vitae; office notes from a Dr. Bergeon; a healthcare provider questionnaire; letters from Dr. Deitrick, Dr. Kadaj, Dr. Wilkinson, and Dr. Tinkle; results from a nerve conduction study; physical therapy notes; x-ray of Plaintiff's shoulder and lumbar spine; MRI of Plaintiff's cervical spine; sleep study results; and medical request forms. Adm. Record at 4–5, ECF No. 49-5. Plaintiff's

second appeal, and all medical information, was reviewed by a third physician, Dr. Shadrach Jones. Adm. Record at 15, ECF No. 49-6. Plaintiff's final appeal was denied in October 2014, for the reasons explained in Judge Morris's report:

> In consultation with reviewing physician Shadrach H. Jones, IV, M.D., Appeal Assignee Elizabeth Palmer noted that "the current objective or quantifiable clinical examination, clinical diagnostic testing, or imaging documentations do not support a significant ongoing physical functional impairment which would preclude [Plaintiff] from performing her own occupational duties on a full time basis." (Doc. 49-6 at 15) (emphasis added). She observed that Dr. Tinkle's medical genetics analysis "did not document any specific physical findings or impairments that would preclude the required occupational functional abilities," that his suggested limitations were "not supported by documented impairment," that Dr. Kadaj's physical examination was "normal" and presented no musculoskeletal or neurologic exam findings, that Dr. Bergeon's notes found "no focal weakness or other neurological abnormalit[ies]," and that Dr. Bergeon did not suggest any work limitations, though he "encouraged active independent exercise." (Id.) (emphasis added).

Plaintiff commenced this action on February 27, 2015.

**II.**

Plaintiff seeks attorney fees and costs, contending that she has had success on the merits and that the *King* factors weigh in favor of such an award. *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).[1] Specifically, Plaintiff argues that the Sixth Circuit's finding that LINA's conduct in denying her benefits was arbitrary and capricious and the Court's order remanding the case for a full and fair review establish the propriety of a fee award. Mot. at 1–2, ECF No. 85. Plaintiff also argues that Defendants are financially capable of satisfying a fee award, that such an award would deter similarly-situated plan administrators from behaving arbitrarily in

---

[1] Plaintiff takes up the question of whether a motion for fees is appropriate at this time, while remand is still pending. Mot. at 4, ECF No. 85. Defendant does not respond to this assertion, appearing to agree with Plaintiff.

- 5 -

addressing applications for benefits, and that Plaintiff's success confers a common benefit for other participants in the ERISA plan. *Id.* at 9–11.

Defendants argue that a fee award is not supported by the *King* factors in this case. Specifically, they argue that a finding of "arbitrary and capricious" is not the same as a finding of culpability or bad faith, and that they are not culpable. Resp. at 5, ECF No. 86. Defendants do not contest that they are financially capable of satisfying an award, but they do argue that the conduct that resulted in the denial of Plaintiff's claims was not rooted in bad faith; instead, Defendants contend that the denial was rooted at most in an honest mistake concerning the necessity of a physical examination of the Plaintiff, and that a fee award will not have a deterrent effect. *Id.* at 8. Additionally, Defendants argue that Plaintiff's action sought a private benefit, and that it will not— nor was it designed to—benefit others enrolled in an ERISA plan. *Id.* at 9. Finally, Defendants claim that their position was not wholly without merit since they were successful at various points in the litigation. *Id.* at 10.

The parties also contest the reasonableness of fees requested in this motion, including the number of hours worked and the type of tasks included (e.g. administrative and clerical). As the Court finds that a fee award is not warranted, the Court will not address the reasonableness of the fees requested.

**III.**

Pursuant to ERISA, 29 U.S.C. § 1132(g), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The party seeking fees need not be a "'prevailing party' to be eligible for an attorney's fee award." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Rather, they must simply achieve "some success on the merits." *Id.* at 256. "The punishment of bad faith litigants is a legitimate purpose under ERISA, but not the only

purpose." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991). When determining whether to award fees, courts consider the following five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*King*, 775 F.2d at 669. "These factors are not statutory and typically not dispositive. Rather, they are considerations representing a flexible approach." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006).

## IV.

### A.[2]

With respect to the first *King* factor, Plaintiff does not allege or attempt to prove that Defendants acted in bad faith. Indeed, she cites a Sixth Circuit case that distinguishes between bad faith and culpability, ostensibly for the purpose of conceding that Defendants did not act in bad faith but are nonetheless culpable. Mot. at 8, ECF No. 85 (citing *Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 809-10 (6th Cir. 2002)). Plaintiff notes that "while 'an arbitrary and capricious denial of benefits does not *necessarily* indicate culpability or bad faith,' Sixth Circuit Court of Appeals precedent 'by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination.'" Mot. at 9, ECF No. 85 (quoting *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008) (internal citations omitted) (emphasis in original)). In other words, a court may find that evidence that led to an arbitrary-and-capricious determination also leads to a finding that the actor is culpable. The

---

[2] It is undisputed that Plaintiff achieved "some success on the merits," and therefore satisfies the threshold of eligibility for a fee award.

inquiries, however, are separate. Indeed, to hold that a finding of arbitrary and capricious conduct creates a presumption of culpability would frustrate the purpose of the inquiry:

> To conclude that the degree-of-culpability factor always favors an award of attorney fees when a case is remanded to address an inadequate review of the record would essentially equate the first *King* factor with a litigant's degree of success on the merits. The law of this circuit makes clear that these are separate inquiries.

*Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 339 (6th Cir. 2013) (internal citations omitted). Thus, the first *King* factor requires a deeper and more detailed inquiry beyond merely whether a Plaintiff achieved remand under the arbitrary and capricious standard of review.

An "arbitrary and capricious" ruling suggests some level of culpability on the part of the plan administrator. However, the first *King* factor does not ask merely whether a party is culpable; rather, the inquiry concerns the *degree* of culpability: "[T]he first factor asks district courts to consider the 'degree' of culpability or bad faith, not merely whether the opposing party is culpable in any sense of the word." *Id.* Indeed, the *Hoover* court explicitly found the defendant's culpability to be high. *Hoover*, 290 F.3d at 809–10.

Here, the fact that LINA did not exercise its right to order a physical examination of Plaintiff does not, by itself, suggest a high level of culpability.[3] The Sixth Circuit has held that "there is 'nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination,'" though that court has cautioned plan administrators to avoid relying too heavily on file reviews alone when the option to conduct physical examinations exists. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006). Indeed, the Sixth Circuit's criticism

---

[3] Notably, Plaintiff's analysis of the first *King* factor consists solely of the observation that the Sixth Circuit found that the plan administrator's decision was arbitrary and capricious. Plaintiff offers no analysis as to whether the specific facts of this case support a finding that Defendants are highly culpable.

of LINA's decision making process – that it rejected Plaintiff's reports of pain without physically examining Plaintiff – was limited to "the facts of this case." Op. at 16, ECF No. 81.

Here, the Sixth Circuit did not credit LINA's decision to deny Plaintiff disability benefits because her treating professionals did not identify any "ongoing physical functional impairment which would preclude her from performing her own occupational duties." Op. at 12. On the contrary, it viewed LINA's decision to be based on its rejection of Plaintiff's reports of pain. The Sixth Circuit explained:

> LINA's decision to deny STD benefits was arbitrary and capricious because LINA had the option to conduct a physical examination, yet declined to do so . . . . It was not reasonable for LINA to brush aside [Plaintiff's] claims of debilitating pain without first performing a physical examination . . . . It was arbitrary and capricious for LINA to deny [Plaintiff's] disability without exercising its right to conduct a physical examination.

Op. at 15, 16, 19, ECF No. 81. The Sixth Circuit also focused on LINA's interpretation of the plan terms. Specifically, the Sixth Circuit took issue with the fact that LINA conflated "satisfactory proof" of disability (which was required by the plan's terms) and "objective proof" of disability (which LINA actually required). The Sixth Circuit found that satisfactory proof is less demanding than objective proof. *Id.* at 17.[4]

But for the different interpretation of the plan's terms, LINA's decision-making process appeared to be thorough and complete. In *Moon*, the court found that the improper basis of the administrator's determination was not the fact that they opted for a file review rather than a

---

[4] As Plaintiff notes, LINA's denial letter used a definition of "disability" that differed from the definition of disability found in the Plan. Mot. at 11, ECF No. 85 (citing Op. at 19, n. 6, ECF No. 81). In her report and recommendation, Judge Morris found that this was harmless error. Rep. & Rec. at 21-24, ECF No. 63. Moreover, the Sixth Circuit noted that the definitions were "similar, but not identical," but then concluded that Plaintiff "has not shown that the two definitions are materially different in the context of this case." Op. at 20. Because LINA's incorrect recitation of the definition of disability was immaterial to LINA's error, it has no effect on the determination of whether LINA acted in bad faith.

physical examination, but that "they did not provide a reasoned explanation that supported their outcome" and that the file review was selective. *Moon*, 461 F.3d at 643. Here, by contrast, LINA responded to the medical evidence provided by Plaintiff and provided reasoned explanations for its determinations. While the Sixth Circuit found that LINA's failure to perform a physical examination of the Plaintiff was unreasonable, it did not appear to find fault with the thoroughness of LINA's file review. The file reviews undertaken by LINA for Plaintiff's initial application for STD benefits and for each successive appeal were each undertaken with the involvement of different physicians, each of whom provided a reasoned explanation for their conclusions. Each review, however, was premised on LINA's interpretation that the plan required objective medical proof Plaintiff's functional impairment. *Id*. at 4–6, 8–9, 12. When Plaintiff's treating professionals did not produce such evidence, the plan administrators determined that it was reasonable to deny her benefits.

Thus, the Sixth Circuit's arbitrary-and-capricious determination was at least in part based on LINA's interpretation of the plan's terms. A mistaken interpretation of plan terms, however, is not sufficient to find a plan administrator highly culpable for the purposes of the *King* test. *See Shelby Cty. Health Care Corp.*, 581 F.3d at 377 (6th Cir. 2009) (holding that an "erroneous interpretation of certain terms in [defendant's] plan documents does not constitute culpable conduct for purposes of determining whether to award attorney fees."). Although LINA erred in failing to exercise its right to conduct a physical examination, it did provide reasoned, if mistaken, explanations for its determinations. Furthermore, LINA appears to have engaged in a full, rather than selective, file review. Defendants' conduct may have been culpable, but it was not sufficiently culpable for this factor to weigh in favor of a fee award.

**B.**

With respect to the second *King* factor, it is undisputed that Defendants have the financial resources to pay a fee award. Resp. at 8, ECF No. 86. However, "[w]hile it is true that [the defendant] could pay the fees if ordered to do so, prior cases have considered this factor 'more for exclusionary than for inclusionary purposes.'" *Warner v. DSM Pharma Chemicals N. Am., Inc.*, 452 F. App'x 677, 681–82 (6th Cir. 2011) (internal citations omitted). Previous rulings in this district state that "[a]lthough Defendant is certainly able to pay attorney fees, this factor has no impact on the Court's ultimate determination." *McCandless v. Standard Ins. Co.*, No. 2:08-CV-14195, 2015 WL 869264, at *4 (E.D. Mich. Feb. 27, 2015). In other words, all other things being equal, the scales do not tip in favor of a fee award simply because a defendant has substantial financial resources.

**C.**

The first and third *King* factors generally go hand-in-hand. *See Foltice v. Guardsman Products*, 98 F.3d 933, 937 (6th Cir. 1996). This case is no exception. Deterrence is

> likely to have more significance in a case where the defendant is highly culpable than in a case such as this one. Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing.

*Id.*; *See also Warner*, 452 F. App'x at 681 ("The lack of any evidence of deliberate misconduct or improper motives by [Defendant] also means that . . . there would be no deterrent effect on [Defendant]."). As Defendants have not engaged in bad faith or highly culpable conduct, the effectiveness of the award as a deterrent will likely be negligible at best. Therefore, this factor does not weigh in favor of a fee award.

**D.**

The fourth *King* factor asks "whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA." *King*, 775 F.2d at 669. Plaintiff claims that "[a]ll individuals covered by the Plan will benefit from LINA's warning/learning/lesson that its failure to follow the Plan language is not permitted, and has negative monetary consequences." Mot. at 11, ECF No. 85. While this may be true, it would be equally true in any case in which the plan administrator's decision is overruled. Moreover, the relevant inquiry in this Circuit is whether a plaintiff *sought* to confer a common benefit or *sought* to resolve a significant legal question. There is no evidence that Guest-Marcotte brought this action for any other reason than to secure short-term disability benefits for herself. Similarly, the claimant in *Gaeth*

> arguably obtained a "common benefit" for all plan participants in the form of deterring the plan administrator from making similarly unreasonable decisions in the future. But with regard to the common-benefit factor, this court nevertheless concluded that the facts weighed against awarding attorney fees because the claimant only sought [short-term disability] benefits for herself and *did not seek to confer* a benefit upon all plan participants.

*Gaeth*, 538 F.3d at 533 (internal citations omitted) (emphasis added). *See also Foltice*, 98 F.3d at 937 (noting that there was "no evidence that the plaintiff sought, through this action, 'to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA.'") (internal citations omitted); *Moon*, 461 F.3d at 645 (rejecting plaintiff's argument that the outcome of the case would resolve a significant legal question and concluding that "whether this is true or not is irrelevant because there is no evidence in the record that Moon instituted this litigation to resolve any significant legal issues.").

In *Gaeth*, the claimant relied on the Second Circuit's *Chambless* test rather than the *King* test, and the court took the opportunity to "highlight[] the difference between this court's *King* test

('whether the party requesting fees *sought to confer* a common benefit,'), and the Second Circuit's *Chambless* test ('whether the action conferred a common benefit,')." *Gaeth*, 538 F.3d at 533 (internal citations omitted) (emphasis in original). The court further noted that focusing on the deterrent effect improperly blends the third and fourth *King* factors together. *See Id.* ("[T]he deterrent-effect and common-benefit factors are separate inquiries"). Because Plaintiff did not seek to confer a common benefit or resolve significant legal questions with respect to ERISA, this factor does not weigh in favor of a fee award.

### E.

With respect to the fifth *King* factor, Defendants' positions are not entirely without merit, as demonstrated by the outcome of the district court proceedings. However, Plaintiff ultimately prevailed on appeal by overcoming the highly deferential arbitrary-and-capricious standard, which indicates relatively more merit in Plaintiff's claim. *See McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546 (6th Cir. 2011) (holding that the fifth *King* factor favored a fee award because the plaintiff "had overcome the highly deferential arbitrary and capricious standard to achieve a remand."). Based on Plaintiff's success on appeal, this factor favors a fee award.

### V.

Having considered the factors set forth in *King* in light of the entire record, the Court finds that, on balance, a fee award is not warranted.

### VI.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Attorney Fees and Costs, ECF No. 85, is **DENIED**.

Dated: July 17, 2018　　　　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 17, 2018.

          s/Kelly Winslow
          KELLY WINSLOW, Case Manager