UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIMBERLY J. GUEST-MARCOTTE,

        Plaintiff,                                  Case No. 15-cv-10738

v.                                                  Honorable Thomas L. Ludington
                                                              Magistrate Judge Patricia T. Morris
LIFE INSURANCE COMPANY OF
NORTH AMERICA, et al.,

        Defendants.
_____/

**ORDER GRANTING IN PART PLAINTIFF'S MOTION AWARDING ATTORNEY FEES AND COSTS AND DENYING REQUEST FOR PRE-JUDGMENT INTEREST AND CLAIMS FOR UNJUST ENRICHMENT**

This matter is on remand from the United States Court of Appeals for the Sixth Circuit, for the second time. On March 15, 2016, this Court adopted Magistrate Judge Morris's report and recommendation finding that Defendant's Plan Administrator did not abuse its discretion in rejecting Plaintiff's application for short-term disability benefits. Plaintiff was diagnosed in July of 2013 with Ehlers-Danlos Syndrome, a potentially serious disease with a range of symptoms. The Plan Administrator's decision turned on the absence of Plaintiff's submission of clinical evidence assessing her functional capacity to engage in gainful employment, taking into consideration her medical condition. There has been no reasonable dispute that the Plan Administrator thoroughly and thoughtfully reviewed all of Plaintiff's medical evidence (as supplemented by Plaintiff on numerous occasions) and communicated to Plaintiff and her treaters what it needed to assess her residual functional capacity notwithstanding the fact that it was "in no way stating [that Plaintiff's] symptoms do not exist." ECF No. 49-1 at 60. Indeed, Dr. Bradley Tinkle, an Ehlers-Danlos Syndrome physician specialist, when contacted by the Plan

Administrator simply responded that he "did not do any functional testing as I am not certified in this area" but he did emphasize that "it has been my experience that these patients can vary tremendously on such evaluations depending on the time of day, events preceding day, pain levels, quantity and quality of sleep the night before."

The Court of Appeals disagreed. The Court found that the Plan Administrator's decision turned, in fact, on its disbelief of Plaintiff's self-report of her symptoms ("that is the essence of a credibility determination."), ECF No. 81 at 17, and not on Plaintiff's failure to submit any clinical information addressing her residual functional capacity. The Court of Appeals concluded that the Plan Administrator acted arbitrarily in failing to exercise a plan provision permitting it to require a physical examination of disability applicants. Indeed, failing to exercise the right rendered the Plan Administrator's decision both arbitrary and capricious. The Court of Appeals did not, however, award benefits but remanded the case to this Court to remand for a further assessment by the Plan Administrator. The Plan Administrator thereafter awarded the short-term disability benefit.

Subsequently, Plaintiff's counsel sought to recover attorney fees which this Court did not find merited for reasons outlined in its July 17, 2018 opinion. ECF No. 88. Again, the Court of Appeals disagreed because this case "[i]s not a case in which we determined on balance that the plan's decision was marginally arbitrary or capricious." ECF No. 94 at 6. The Court of Appeals explained that its "previous decision did not depend entirely on the lack of a physical examination" but that its failure to do so was a "part of a string of actions that essentially prevented Guest-Marcotte from proving her disability." *Id.* at 7. Focusing on the Plan Administrator's interpretation of the language of the plan, the Court of Appeals concluded that "LINA repeatedly made a clear

legal error in determining not to get a physical exam in the face of otherwise compelling evidence of disability." *Id.* at 8. The decision denying an award of attorney fees was also reversed.

On April 25, 2019, this Court directed the parties to file supplemental briefing to address Plaintiff's recovery of fees. She initially contended the plan is responsible for $337,924.35 but has since reduced that to $227,210.64. Plaintiff filed her supplemental brief On May 10, 2019, seeking the following relief: 1) prejudgment interest of $88,570.97, which represents 10% interest on the total amount of benefits she was awarded by the plan administrator ($214,925.49) compounded for the period from June 10, 2013-August 3, 2018; 2) an additional "unjust enrichment" claim for $110,713.71 which, according to Plaintiff, equates to 8% interest on the same benefit award compounded over the same period of time, and represents the amount by which LINA was unjustly enriched by retaining benefits properly owed to Plaintiff[1]; 3) attorney fees in an amount of $135,933.00, which represents 507 hours of work at rates ranging from $110-$310 per hour, and 4) $2,706.67 in costs. Defendants responded on May 24, 2019 (ECF No. 98) and Plaintiff replied on June 10, 2019 (ECF No. 100).

## I.

## A.

Plaintiff's request for prejudgment interest is without merit. Plaintiff cites *Drennan* for the proposition that a discretionary award of prejudgment interest is appropriate in light of "LINA's arbitrary and capricious conduct." ECF No. 97, PageID.3262. In *Drennan*, the Sixth Circuit addressed the propriety of awarding prejudgment interest on a damage award in an ERISA claim for breach of fiduciary duty. *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992). The district court had denied prejudgment interest, finding it unwarranted based on the conduct of

---

[1] Plaintiff has now withdraw this request, per her reply brief.

the defendants. *Id.* The court of appeals reversed, explaining that a discretionary award of prejudgment interest is compensatory, not punitive, and that the district court improperly denied the interest claim based solely on the lack of defendant's culpability. *Id.*

A review of the *Drennan* opinion reveals several bases for rejecting Plaintiff's assertion that LINA's "arbitrary and capricious conduct" warrants an interest award under *Drennan*. First, Plaintiff in this case asserted a claim for wrongful denial of short-term disability benefits, whereas the plaintiff in *Drennan* asserted a claim for breach of fiduciary duty. Second, *Drennan* explained that the defendant's conduct is irrelevant because prejudgment interest is compensatory, not punitive. Plaintiff identifies no authority for the proposition that a discretionary interest award is permitted in a claim for wrongful denial of benefits, nor does she identify authority for the proposition that LINA's arbitrary and capricious conduct is a factor the Court can or should consider.

More importantly, Plaintiff is not entitled to pre-judgment interest because she (unlike the plaintiff in *Drennan*) has not obtained a money judgment. The Court of Appeals did not hold that Plaintiff was entitled to benefits under the short-term disability plan.[2] Indeed, the Sixth Circuit noted as follows:

> As for the proper remedy, Guest-Marcotte contends that this court should simply award her benefits. However, because she is not clearly entitled to STD benefits under the Plan, the proper remedy is a remand. "'Where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled,' remand to the plan administrator is the appropriate remedy." *Helfman*, 573 F.3d at 396 (quoting *Cooper*, 486 F.3d at 171 (alteration adopted)). Even though LINA's decision-making process was flawed for the reasons identified above, the record does not show that Guest-Marcotte clearly qualifies as disabled within the meaning of the Plan. The correct

---

[2] It appears that this misunderstanding persists as of Plaintiff's most recent filing: "Plaintiff has not sought costs or attorney fees relating to the request of Plaintiff to receive long term Disability benefits *after the court had ordered that she be paid her short-term benefits*." ECF No. 100, PageID.3520. No court has ever ordered that she be paid short-term benefits.

> remedy, therefore, is a remand to permit LINA another chance to conduct a deliberate and principled review of Guest Marcotte's claim.

Op. at 19, ECF No. 81. Rather than awarding benefits outright, the Court of Appeals held that a procedural defect in LINA's decision making process (the failure to exercise its right to have her examined by one of its doctors) required a remand for LINA to readdress the issue. The new benefits decision could have potentially resulted in another denial. Thus, Plaintiff's claim for pre-*judgment* interest is anomalous under circumstances where she did not obtain a money judgment from the Court, but a remand order requiring a de novo determination for a short-term disability benefit. Plaintiff did not elect to address this issue in her reply.

Even if Plaintiff was entitled to any pre-judgment interest on the $22,844 LINA awarded her in short-term disability benefits, Plaintiff also seeks prejudgment interest on $214,925 in total benefits (that is her short-term disability and her long-term disability benefit). However, only her claim for short term benefits was ever addressed. The plan administrator also apparently awarded her approximately $192,000 in additional benefits under its long-term disability plan. The claim for long term disability was an independent claim which was never litigated, yet accounts for nearly 90% of the prejudgment interest Plaintiff seeks. Defendants underscored this issue in their response. In her reply, Plaintiff offered the following justification:

> Because of her medical condition, as noted before, this matter necessarily encompassed the expectation that if Plaintiff were awarded her short term disability benefits, she would apply for long term disability. The subject was from time to time a consideration when the request for Short Term Benefits were appealed. Mention of the long term benefits was appropriate in the context of seeking her short term disability benefits, and any time expended was reasonable and should also see compensation, as the prayer of the Plaintiff in her Complaint for all remedies that are fair and just is to be honored . . .We reviewed with care the Opinion of the Sixth Circuit ordering attorney fees. It expresses contempt for Defendants' tactics that alone suggests that a fair award would include pre- and post-judgment interest.

ECF No. 100, PageID.3520 (emphasis added). Perhaps the award of short term benefits and the Court's assessment of LINA's decision motivated the Plan Administrator to award long term benefits. But that does not entitle her to pre-judgment interest on a short-term disability claim (for which she received no judgment) or a long-term disability claim (which was never litigated). Accordingly, the request will be denied.

**B.**

Plaintiff initially sought $110,713.71 in unjust enrichment based on her reading of *Rochow*, which she contended directly supported her request. *Rochow, et. al v. Life Ins. Co. of North America*, 780 F.3d 364, 4 (Cir. 2015). As noted by Defendants in their response brief, *Rochow* held precisely the opposite, namely that a plaintiff cannot simultaneously maintain claims for unjust enrichment and wrongful denial of benefits. It remains unclear how Plaintiff concluded that *Rochow* was directly supportive of her unjust enrichment claim, when in fact *Rochow* plainly forecloses such a claim. In any event, Plaintiff withdrew her unjust enrichment claim in her reply.

**II**.

Finally, Plaintiff's request for fees and costs must be addressed (which was in fact the sole request in her initial fee motion, was the sole purpose for the remand from the Sixth Circuit, and was also the sole purpose for supplemental briefing directed by this Court). Plaintiff seeks attorney fees in an amount of $135,933, which represents 507 hours of work at rates ranging from $110-$310 per hour, and $2,706.67 in costs

"The award of attorney's fees must be reasonable as determined under the 'lodestar' approach." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar approach involves multiplying the number of hours reasonably spent by a reasonable hourly rate in the community for similar work. *Id.* The party

requesting attorney's fees bears the burden of establishing that the number of hours and hourly rate are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The "essential goal is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Defendants do not dispute the rates charged by Plaintiff's counsel. Defendants do dispute the number of hours Plaintiff's counsel invested. At the outset, Defendants contended as follows: "To date, Defendants' counsel has spent approximately 368.9 hours on this case. (Ex. 4, Schwartz Dec, ¶3). Contrastingly, for performing approximately the same tasks, Plaintiff seeks fees for 507 hours. Consequently, Plaintiff's fees are excessive." Defendants offer no legal support for this factual observation.

Second, Defendants take issue with certain billing entries for "clerical" work, which Defendants have highlighted in yellow. Defendants do not expand on this issue, but rely on the briefing previously submitted to the Court last June.[3] In their previous brief (ECF No. 86), Defendants disputed billing entries for tasks labelled "copy," "prep," "review," "finalize," "assemble" and "file." ECF No. 86, PageID.3105 (citing *Kensu v. Buskirk*, No. 13-10279, 2016 WL 6465890, at *3 (E.D. Mich. Nov. 1, 2016) (holding that tasks like "copying exhibits and preparing exhibit books", "drafting and sending request for [] records" and "editing final pretrial order to include exhibit numbers and filing it" were purely clerical and not compensable.)). *Kensu* involved a prevailing party fee award under 42 U.S.C. 1988, however, not prevailing party fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

---

[3] The parties previously briefed both the recoverability of fees and the amount of fees. Because the Court determined that a fee award was not warranted, the Court did not address the fee amount. Plaintiff successfully appealed that decision. On remand, both parties rely to some extent on the briefing they previously submitted in May-June, 2018 regarding the fee amount.

Much like Defendants, Plaintiff also cites caselaw interpreting section 1988's prevailing party fee standard. She cites *Missouri v. Jenkins* (and cases relying on it) for the proposition that such clerical work is recoverable. ECF No. 86, PageID.3167 (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989); *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571 (2008). *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 99 (1991)). *Jenkins* (and the cases relying on *Jenkins*) addressed a related but separate question, namely whether paralegal time should be billed separately from attorney time and whether paralegal time should be billed at the employer's cost or at the market rate. *Jenkins* did not address what constitutes "purely clerical" work or whether such work is ever recoverable, even by a paralegal.

Thus, assuming the case law interpreting section 1988's fee standard applies here,[4] Defendants appear to be on solid ground that, within the Sixth Circuit, purely clerical tasks (even performed by a paralegal) are not recoverable. *See Kensu v. Buskirk*, No. 13-10279, 2016 WL 6465890, at *3 (E.D. Mich. Nov. 1, 2016); *B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs,* 522 F.3d 657, 666 (6th Cir.2008); *Salamango v. NCSPlus Inc.*, No. 2:14-CV-10189, 2014 WL 3900583, at *1 (E.D. Mich. Aug. 11, 2014).

However, the distinction between "purely clerical" tasks and tasks involving "legal skill," is perhaps more useful in theory than in practice. The distinction is not always apparent. For instance, Defendants take issue with Plaintiff's billing entries containing verbs such as "assemble," "review," "finalize," "prep" and "file" pleadings, motions, briefs, and other papers. These tasks are not necessarily clerical as Defendants contend. Local Rules as well as judge's practice guidelines often impose rigorous formatting and procedural requirements that the parties must comply with in order to have their filings accepted. Although this work is not substantive legal

---

[4] Which both parties assume.

analysis, paralegals nevertheless do provide value to the client by becoming familiar with these local rules and practice guidelines.[5] Moreover, the billing rates for paralegals are commensurate with the value provided. Here, Plaintiff's counsel billed the paralegals time at $110/hour, as compared to $300 per hour for the attorneys.

Ultimately, as noted earlier, in determining an appropriate fee award, the "essential goal is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Defendants have highlighted in yellow the billing entries they consider clerical work, but have not otherwise substantively engaged with any particular entry to explain why they are disputing it. The Court will not independently review nearly five years' worth of billing entries.[6] A brief review of these entries reveals that, on the whole, they are not unreasonable billing entries for legal services rendered. The requested reduction will therefore be denied.

Defendants argued in their initial response dated June 4, 2018 that Plaintiff should not be permitted to bill for tasks associated with her first amended complaint, which only added a party against whom she never sought judgment. ECF No. 86, PageID.3106. Defendants also dispute the hours Plaintiff billed for research on an ERISA section 510 claim, which was never pursued. *Id*. Indeed, the un-litigated claims were, by definition, unnecessary to achieve the result Plaintiff achieved. In reply, however, Plaintiff contended that she incurred those costs because Defendants mistakenly produced documents from an unrelated disability plan, along with an accompanying Summary Plan Description. ECF No. 87, PageID.3168. According to Plaintiff, once it was determined that those documents were erroneously included, she ceased pursuing those matters.

---

[5] And, of course, it is probably not a best practice for a paralegal to engage in substantive legal analysis, which is more appropriately reserved for licensed attorneys.
[6] Even with the benefit of Defendants' highlighting, this is no minor task, as Defendants have highlighted 61 allegedly offending entries in yellow (many of which are as small as 0.2 hours at $110/hr, which equates to $22).

*Id.* Defendants did not respond to Plaintiff's explanation for these billing entries.[7] The requested reduction will therefore be denied.

In its June 2018 briefing, Defendants also took issue with Plaintiff billing for discovery and for contact with an unrepresented party. ECF No. 86. In reply, Plaintiff conceded that such entries were not billable and, in her latest motion, Plaintiff states that she has "to the extent possible" excluded entries related to her discovery requests. ECF No. 97, PageID.3265. However, Defendants contend that Plaintiff is still billing for these matters, and Defendants have highlighted the offending entries in purple and orange, which total 33.3 hours. Plaintiff did not address these issues in her latest reply brief. Accordingly, the requested reduction will be granted. The 33.3 hours consists of 6.1 hours of work performed by KSK at $310/hr ($1891); 23.7 hours of work performed by DGG at $300/hr ($7,110); and 3.5 hours of work performed by DAY at $110/hr ($385), for a total reduction of $9,386.

Defendants also ask the Court to reduce Plaintiff's 42.7 hours billed for appellate briefing by 10% because the "briefing largely mirrored the briefing before this Court." This argument is undeveloped. Defendants seem to suggest that the 42.7 hours is excessive in light of the time spent on the district court briefing, because the issues were largely the same. However, Defendants have not identified how long Plaintiff invested on the relevant district court briefing. Thus, there is nothing to compare the 42.7 hours to. The requested reduction will be denied.

Finally, Defendants contend that Plaintiff's bill of costs for the district court proceedings sought $1037.12, but that the charges contained therein only totaled up to $892.24, a difference of

---

[7] As explained above, there are two sets of briefing on the fee motion, one from June 2018 and one from May 2019. Defendants rely to a large extent on the reasoning provided in their response brief from June 2018 (ECF No. 86). However, Plaintiff addressed many of Defendants' concerns in her reply brief in June 2018 (ECF No. 87). Defendants' latest brief (ECF No. 98) did not address some of Plaintiff's explanations.

$144.88. Plaintiff has attached an updated bill of costs and the figures align with the amount of her request. Defendants also do not contest the costs Plaintiff seeks on appeal.

### III.

Accordingly, it is **ORDERED** that Plaintiff's motion, ECF No. 85, is granted in part. Plaintiff is awarded $126,547 in attorney fees, and $2,706.67 in costs. Plaintiff's request for interest and unjust enrichment are denied.

Dated: July 26, 2019                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge